Dear Mr. Jove:
On behalf of the City of Hallandale Beach, you ask substantially the following question:
May an order of the city's Unsafe Structures Board substitute for a judicial warrant to authorize the city to enter premises found to be in violation of the city's code without the owner's consent, to abate the violations and to arrest the owners?
In sum:
An order of the city's Unsafe Structures Board authorizes the city to enter premises found to be in violation of the city's code in order to abate or repair the violation without the owner's consent, but does not substitute for the appropriate warrant to arrest the owner.
You state that the property in question is an owner-occupied homestead found by the city's code enforcement board to be in violation of several of the city's codes or ordinances. The property has also been found to be in violation of the Florida Building Code. The property has no potable water, thereby creating unsanitary conditions, and has been determined to be unsafe and uninhabitable. You indicate that the property owner has been notified of the code violations, given an opportunity to be heard, and allowed time to cure the violations. However, the property owners did not appear at the hearing, nor did they defend the action. The city's Unsafe Structures Board has rendered an order to vacate the premises and to bring the structure into compliance with the building code and to remove all unsafe conditions from the building.[1]
Part I, Chapter 162, Florida Statutes, is the "Local Government Code Enforcement Boards Act." It was created to:
"promote, protect, and improve the health, safety, and welfare of the citizens of the counties and municipalities of this state by authorizing the creation of administrative boards with authority to impose administrative fines and other noncriminal penalties to provide an equitable, expeditious, effective, and inexpensive method of enforcing any codes and ordinances in force in counties and municipalities, where a pending or repeated violation continues to exist."[2]
The procedure for enforcement of local codes is set forth in section 162.06, Florida Statutes. As noted above, it appears that these procedures have been followed, yet the violations continue and the question of whether the city may enter the property to correct the violation without a warrant remains. In addition to the imposition of administrative fines for a code violation, the act recognizes that if a violation is one which is described in section 162.06(4), Florida Statutes, the enforcement board must notify the local governing body "which may make all reasonable repairs which are required to bring the property into compliance and charge the violator with the reasonable cost of the repairs along with the fine imposed pursuant to this section."[3]
Section 162.06(4), Florida Statutes, states:
"If the code inspector has reason to believe a violation or the condition causing the violation presents a serious threat to the public health, safety, and welfare or if the violation is irreparable or irreversible in nature, the code inspector shall make a reasonable effort to notify the violator and may immediately notify the enforcement board and request a hearing."
Thus, the statute recognizes that an enforcement board, having determined that a violation presents a serious threat to the public health, safety, and welfare or is irreparable or irreversible in nature, must notify the local governmental body. Upon notification, the governmental body enforcing the code is authorized to make all reasonable repairs required to bring the property into compliance. There is no mention that further process is required to authorize the governing body to enter the property in order to make the necessary repairs.
The Florida Statutes provide for the procurement and issuance of "inspection warrant[s]" which authorize a state or local official to conduct an inspection of any building, place or structure, other than an owner-occupied family residence, as authorized or required by state or local law or rule relating to municipal or county building, fire, safety, plumbing, electrical, health, minimum housing, or zoning standards.[4] Section 933.21, Florida Statutes, specifically provides that "[o]wner-occupied family residences are exempt from the provisions of [sections 933.20-933.30, Florida Statutes]." As related to municipal or county building, fire, safety, plumbing, electrical, health, minimum housing or zoning standards, all other places, dwellings, structures or premises are subject to the provisions of sections 933.20-933.30, Florida Statutes.
This office has previously determined that local code enforcement officers are not authorized to enter onto any private, commercial, or residential property to assure compliance with or to enforce the various technical codes or to conduct any administrative inspections or searches without the consent of the owner or the operator or occupant of such premises, or without a duly issued search or administrative inspection warrant.[5] In this instance, however, the initial inspection by the code enforcement officer and subsequent finding of a violation by the Unsafe Structures Board have already occurred. As previously noted, where the violation poses a serious threat to the public health, safety, and welfare, the code enforcement board must notify the governing body which is then authorized to make all reasonable repairs to bring the property into compliance.
The subsequent arrest of an individual for code violations, however, is governed by other provisions in Chapter 162, Florida Statutes. Section 162.22, Florida Statutes, in pertinent part, provides:
"The governing body of a municipality may designate the enforcement methods and penalties to be imposed for the violation of ordinances adopted by the municipality. These enforcement methods may include, but are not limited to, the issuance of a citation, a summons, or a notice to appear in county court or arrest forviolation of municipal ordinances as provided in chapter 901. Unless otherwise specifically authorized and provided for by law, a person convicted of violating a municipal ordinance may be sentenced to pay a fine, not to exceed $500, and may be sentenced to a definite term of imprisonment, not to exceed 60 days, in a municipal detention facility or other facility as authorized by law." (e.s.)
Clearly, an individual charged with violation of a municipal ordinance may be arrested, but only in compliance with Chapter 901, Florida Statutes. This chapter addresses the arrest of individuals and, among other things, prescribes circumstances in which a warrantless arrest may be made.[6] Section 901.01, Florida Statutes, recognizes that "[e]ach state judicial officer is a conservator of the peace and has committing authority to issue warrants of arrest, commit offenders to jail, and recognize them to appear to answer the charge." Nothing in Chapter 901, Florida Statutes, appears to authorize a municipal administrative entity such as the Unsafe Structures Board to issue arrest warrants, nor is there authority to conclude that an order of such board would have the effect of an arrest warrant.[7]
Accordingly, it is my opinion that an order of the city's Unsafe Structures Board allows the city to enter the premises to make reasonable repairs to abate or correct a code violation presenting a serious threat to the public health, safety, and welfare without the owner's consent, but does not substitute for a judicial warrant necessary to arrest the owner.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] City of Hallandale Beach, Florida, Unsafe Structures Board Order #03-08, November 10, 2008.
[2] Section 162.02, Fla. Stat.
[3] Section 162.09(1), Fla. Stat.
[4] See ss. 933.20-933.30, Fla. Stat.
[5] See Ops. Att'y Gen. Fla. 2002-27, 84-32 (1984), and 74-292 (1974).
[6] See s. 901.15, Fla. Stat.
[7] Cf. s. 162.08, Fla. Stat., enumerating the powers of each enforcement board to:
"(1) Adopt rules for the conduct of its hearings.
(2) Subpoena alleged violators and witnesses to its hearings. Subpoenas may be served by the sheriff of the county or police department of the municipality.
(3) Subpoena evidence to its hearings.
(4) Take testimony under oath.
(5) Issue orders having the force of law to command whatever steps are necessary to bring a violation into compliance."